Argued and submitted June 18, order of modification modified and affirmed as modified; order of contempt affirmed December 4, 1986

In the Matter of the Marriage of

RENNINGER,
*Respondent,*

*and*

RENNINGER,
*Appellant.*

STATE ex rel RENNINGER,
*Respondent,*

*v.*

RENNINGER,
*Appellant.*

(CC 84-463; CA A35891)

730 P2d 37

James D. Huffman, St. Helens, argued the cause and filed the brief for appellant. With him on the brief was Olsen & Huffman, St. Helens.

D. Richard Fischer, Astoria, argued the cause and filed the brief for respondent. With him on the brief was Larson & Fischer, Astoria.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Husband appeals separately from an order modifying the property settlement provisions of a dissolution judgment and from an order of contempt for failure to comply with the modified judgment.[1] We modify the order of modification and affirm it as modified; we affirm the order of contempt.[2]

The parties were married in November, 1979. In 1980, they owned and operated a legal process service business in Clatsop County under the name of Renninger Legal Services. In 1981, they expanded the business into Columbia County. They began to live apart in May, 1984, and on June 14, 1984, wife petitioned for dissolution of the marriage. Husband filed a general appearance on July 17, 1984, but he later withdrew it. On January 30, 1985, wife submitted a "Petition for Decree by Affidavit" that her attorney had prepared. On January 31, 1985, at wife's request, the court entered a default judgment of dissolution, which incorporated provisions of wife's affidavit:

"(7) [Wife] is awarded the assumed business name of Renninger Legal Services and all of the business property presently in her possession.

"(8) [Husband] is awarded all business property presently in his possession."

The judgment recited that "the parties [have] resolved the issues of the division of their assets and liabilities [through their mutual counsel]."

On March 7, 1985, wife moved to

"[enjoin husband] from soliciting or making contact with [Wife's] clients listed in her client lists as of June 14, 1984, for the purpose of acquiring those clients' business, and for a further order enjoining [Husband] from providing any service of process services or legal process or investigatory services in

---

[1] Pursuant to ORAP 2.03(3)(b), both appeals have been made the same appellate case.

[2] Husband also assigns as error that the court, subsequent to the contempt proceeding, awarded attorney fees to wife. Because husband did not amend his notice of appeal from the order of contempt to include an appeal from the award of attorney fees, or file a separate appeal, the issue is not before us. See ORS 19.033(1); ORAP 2.07(1).

Clatsop County, Oregon, for a reasonable period not to exceed five years.

"This motion is * * * supported by the Court's equity powers contained in ORS 107.405 and the attached affidavit of [Wife]."

At the hearing on her motion, at which husband appeared in person and by counsel, wife testified that on the night that they separated husband orally agreed to divide the business:

"Q. [Wife's attorney] Did [husband] make any proposals to you regarding the division of the business known as Renninger Legal Services?

"A. [Wife] Yes, he did.

"* * * * *

"Q. What did he say to you?

"A. He asked me, he said, 'What would you think about splitting the business, because I'm going to leave?' And I said, 'I don't know,' and he said, 'I will take Columbia County and you take Clatsop County, and we will just leave each other and our clients alone,' and I said okay. I really didn't know what else to say at that point.

"* * * * *

"Q. What did you understand that agreement meant — or that proposal of his, what did you understand that meant?

"A. Well, in fact I asked him further when he was leaving, when he had things loaded, I said, 'Does that mean that you don't want me to go into Columbia County or to do any work for the Columbia County clients, and that you aren't going to come into Clatsop County or do any work for the Clatsop county clients?', and he said, 'Yes.' "

In his testimony, husband conceded that he "said [he'd] take Columbia County and move out," but denied that he and wife had agreed not to compete.

The court found:

"1. [T]here was an agreement, oral in nature, made between these parties that they would divide up the business and they would not compete with each other; Mr. Renninger would do business in Columbia County, Mrs. Renninger would do business in Clatsop County;

"2. The motion is one to modify the decree to declare what the decree should have been in the first place.

"3. The Decree is ill-drafted, and especially in provisions number 7 and number 8 where the awards of the business were made;

"4. The decree should have set forth in more particularity what the awards were and as to what the non-competition features of those awards were pursuant to the oral agreement."

On June 6, 1985, the court ordered modifications of the judgment:

"3. [Wife] shall not, and is hereby enjoined for a period of three years from the date of this order, from competing, directly or indirectly, with [husband] in Columbia County by providing any service of process or legal process or investigative services in Columbia County, whether personally or through the [wife's] alter-ego, Renninger Legal Services;

"4. [Husband] shall not, and is hereby enjoined for a period of three years from the date of this order, from competing, directly or indirectly, with [wife] in Clatsop County by providing any service of process or legal process or investigative services in Clatsop County, whether personally or through [husband's] alter-ego, Columbia Legal Services."

The order took effect on June 16, 1985. On husband's motion, this court stayed the modification order on July 9, 1985.

Husband assigns as error the modifications in paragraphs 3 and 4.[3] He argues that a court lacks power to modify

---

[3] Wife also moved to:

"[correct] the judgment entered in this matter on January 31, by making specific in Paragraph 7 and Paragraph 8 that the respective parties named in those paragraphs are awarded the client lists of their respective businesses in the possession as of the date of the filing of the petition in this matter, June 14, 1984.

"This motion is * * * supported by the attached affidavit of [Wife] and counsel and O.R.C.P. 71.

Paragraphs 1 and 2 of the modification order provide:

"1. [Wife] is awarded her client list as of June 14, 1984;

"2. [Husband] is awarded his client list as of June 14, 1984 * * *."

Husband's counsel agreed in open court with wife's counsel that husband did not object to modification of the judgment of dissolution to "include the award of the respective client lists." Accordingly, husband does not challenge paragraphs 1 and 2 of the modification order.

property division provisions of a dissolution judgment. Although wife does not dispute that a court cannot modify property division provisions, *see* ORS 107.135(1)(a); *Garnett v. Garnett,* 270 Or 102, 526 P2d 549 (1974); *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943); *Rousseau and Rousseau,* 76 Or App 528, 709 P2d 764 (1985), she argues that a court has inherent power under ORCP 71C to modify a judgment within a reasonable time. *See also* ORS 107.405; *Morphet v. Morphet,* 263 Or 311, 502 P2d 255 (1972). Wife does not argue that the covenants not to compete were omitted from the judgment because of clerical error, *see* ORCP 71A, or that the court could modify the judgment to include them under ORCP 71B.

■ In *Condliff v. Priest,* 82 Or App 115, 118, 727 P2d 175 (1986), we stated:

"Rule 71C reaffirms a trial court's traditional power to modify a judgment within a reasonable time. *Palmateer v. Homestead Development Corp.,* 67 Or App 678, 680 P2d 695 (1984). Although the boundaries of that authority are not well defined, generally the court's exercise of its inherent authority has been limited to making technical amendments, *Palmateer v. Homestead Development Corp., supra,* to correcting errors of the court, *Stevenson v. U.S. National Bank,* 296 Or 495, 677 P2d 694 (1984), or to situations in which extraordinary circumstances are present. *Vinson and Vinson,* 57 Or App 355, 644 P2d 635 (1982)."

A court has inherent power to modify the property division provisions of a dissolution judgment based on fraud, *Harder v. Harder,* 26 Or App 337, 552 P2d 852 (1976), duress or gross inequity, *Hansen and Hansen,* 31 Or App 823, 571 P2d 568 (1977), or breach of fiduciary duty. *See Elzroth and Elzroth,* 67 Or App 520, 679 P2d 1369 (1984); *see also Harder v. Harder,* 49 Or App 582, 584, 619 P2d 1367 (1980), *rev den* 290 Or 551 (1981), ("[A] disproportionate division of marital assets, not shown to be the result of [husband's] misconduct or overreaching, is insufficient cause to vacate a Decree"). Moreover, we stated in *Vinson and Vinson,* 57 Or App 355, 359, 644 P2d 635, *rev den* 293 Or 456 (1982):

"[The] inherent power [to correct or set aside a judgment under ORCP 71C] is within the court's discretion but does not arise absent extraordinary circumstances such as fraud." (Citation omitted.)

■■ Here, wife has made no showing of fraud or over-reaching by husband. Her failure to request a provision in the default judgment enjoining him from doing business in Clatsop County for any length of time is not a sufficient basis to allow the court to modify the judgment under ORCP 71C. We modify that order to delete paragraphs 3 and 4, and affirm as modified.

■■ Husband's other assignment is that the court erred when it found him in criminal contempt.[4] His argument is that "[t]he evidence showed that [he] did no process serving work in Clatsop County during [June 16 - July 9, 1985]." There is substantial evidence in the record of the hearing on the contempt charge to permit the court to find these facts: In June, 1984, after the parties had separated, husband went into the process serving business with Matthews, who had no prior experience in that business. Matthews became "owner" of Columbia Legal Services, an assumed business name registered in her name in June, 1984. Husband "gave" Matthews his Columbia County accounts and worked as an employe of Columbia Legal Services. Before June 16, 1985, he served process for certain Clatsop County accounts as an "employe" of Columbia Legal Services. From June 16 to July 9, 1985, Matthews served process for those accounts. After July 9, 1985, husband resumed serving process for Clatsop County clients. Substantial evidence supports the court's finding that husband and Matthews were "essentially one entity" for business purposes and that husband had authorized Matthews

---

[4] The contempt order provides:

"[T]he Court having reviewed the evidence and arguments of counsel and finding that the service of process by Mary Matthews, the business and close personal acquaintance and roommate of the Respondent during the period of June 7, 1985, through July 8, 1985, was done in conjunction with as a part of and is attributable to the Respondent and the Court further finding that the Petitioner's rights and her remedies, sought to be protected by this Court's June 6, 1985, Order were prejudiced, it is the

"FINDING of this Court that the Respondent is in contempt of this Court's June 6, 1985, Order and it is further

"ORDERED that the Respondent serve 10 days in the Clatsop County Jail commencing at 11:00 o'clock a.m. 30 days from the date of this order, and it is further

"ORDERED that the Respondent's 10 day jail sentence shall be abated and he will satisfy his contempt if he pays to the Petitioner, within 30 days of this Order the sum of $300."

to conduct the business in violation of the court's order of June 6, 1985. Under the circumstances, the court did not err in finding husband in contempt for violation of the order between June 16 and July 9, 1985.[5] *See State ex rel Kruckman v. Rogers et al.,* 124 Or 656, 265 P 784 (1928).

Order of modification modified to delete paragraphs 3 and 4; affirmed as modified; order of contempt affirmed. Costs to neither party.

---

[5] Husband does not argue that the contempt order is invalid if the provisions of the modification order, on which the contempt order is based, was erroneous. If a court has jurisdiction over the parties and the subject matter, it may hold a party in contempt for failure to obey its order, although the order is erroneous. *State ex rel Mix v. Newland,* 277 Or 191, 560 P2d 255 (1977). Husband's argument is not persuasive that there was no evidence to support the court's finding that wife's rights were prejudiced. *See* ORS 33.020(1). There was evidence to support the court's finding. Husband does not argue that the court did not comply with other requirements of ORS chapter 33 concerning criminal contempt.